158 P.3d 1121 (2007)
2007 UT App 109
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, fka Fulcrum Insurance Company, an Arizona corporation, Plaintiff and Appellee,
v.
Susan Rice TIPTON, dba The Automobile Source, Defendant and Appellant.
No. 20050486-CA.
Court of Appeals of Utah.
March 29, 2007.
*1122 Daniel F. Bertch and Kevin R. Robson, Bertch Robson, Salt Lake City, and Dustin Lance and Samuel Adams, Siegfried & Jensen, Murray, for Appellant.
Tim Dalton Dunn and Paul J. Simonson, Dunn & Dunn, Salt Lake City, for Appellee.
Before GREENWOOD, Associate P.J., ORME and THORNE, JJ.

OPINION
ORME, Judge:
¶ 1 Appellant Susan Rice Tipton appeals the trial court's grant of summary judgment in favor of Appellee General Security Indemnity Company of Arizona, formerly known as Fulcrum Insurance Company (Fulcrum). Tipton claims that Fulcrum violated Utah Code section 31A-22-305(3)(b) by failing to provide her with an acknowledgment form and failing to obtain a waiver of a higher level of uninsured motorist (UM) coverage. See Utah Code Ann. § 31A-22-305(3)(b)(i)-(iii) (Supp.2006). Fulcrum maintains that the waiver required by section 31A-22-305(3)(b) was unnecessary because Tipton actually purchased UM coverage. See id. We reverse and remand for entry of summary judgment in favor of Tipton.

BACKGROUND
¶ 2 In February 2001, Tipton applied for a garage insurance policy[1] with the Dixie-Leavitt Agency. Under the portion of the application designated for requested coverage amounts, there were a series of boxes the applicant could check to specify the type of coverage desired, along with a space available for the applicant to indicate the dollar amount of coverage requested. Tipton marked an "X" in the box next to "Garage Liability" and requested $300,000 in liability coverage. Tipton also marked an "X" in the box next to "Uninsured Motorist" and requested $65,000 in UM coverage. The application did not, however, specify whether the UM coverage was for property damage or bodily injury or both. At the end of the application, Tipton signed her name immediately following the pre-printed sentence, "I have completed and signed a state form selecting or rejecting Uninsured Motorist Coverage." But in fact, no such form was ever presented to or signed by Tipton.[2]
¶ 3 Nearly five months later, Fulcrum issued a garage policy (the Policy) to Tipton. The "Declarations" page of the Policy indicated that the limit for liability coverage was $300,000, with a corresponding $530 premium. The limit for UM coverage, however, was listed as "SEPARATELY STATED IN THE ENDORSEMENT." While the Policy contained an endorsement for UM property damage coverage in the amount of $65,000, due to a clerical error an endorsement for UM bodily injury coverage was not included in the Policy.
¶ 4 In November 2001, Tipton's vehicle was hit by an uninsured motorist. Thereafter, Tipton brought suit for UM bodily injury *1123 damages in the amount of $300,000, the amount of her liability coverage. Fulcrum contended that the Policy only provided $65,000 in UM coverage, and brought an action for declaratory relief to limit its liability for UM bodily injury coverage to $65,000, the amount stated in the endorsement for UM property damage coverage.[3]
¶ 5 In July 2004, Tipton filed a motion for summary judgment, arguing that because the Policy did not contain an endorsement for UM bodily injury coverage, under Utah Code section 31A-22-305(3)(b) the UM coverage should be equal to the liability coverage. See Utah Code Ann. § 31A-22-305(3)(b) (Supp. 2006) ("[T]he limits of [UM] coverage shall be equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum [UM] coverage limits available by the insurer under the insured's motor vehicle policy[.]") (emphasis added). Further, Tipton argued that because the missing endorsement rendered the Policy ambiguous, the Policy should be construed against the insurer, without resort to extrinsic evidence. Fulcrum filed a cross-motion for summary judgment, arguing that Utah Code section 31A-22-305(3)(b) was inapplicable because Tipton had selected, not rejected, UM coverage. Further, Fulcrum urged the trial court to refer to extrinsic evidence in order to resolve the ambiguity caused by the missing endorsement.
¶ 6 The trial court determined that the Policy was ambiguous and resorted to extrinsic evidence, including the Dixie-Leavitt application form and Tipton's prior garage policy with Western Heritage Insurance Company, to conclude that Tipton had requested only $65,000 in UM coverage. Furthermore, the trial court interpreted "the maximum [UM] coverage limits available by the insurer under the insured's motor vehicle policy," see id. (emphasis added), to mean the UM coverage available under the policy Tipton actually purchased  $65,000  as opposed to some amount she could have purchased. Therefore, the trial court concluded that Fulcrum had complied with Utah Code section 31A-22-305(3)(b) because $65,000 was the maximum UM coverage amount available under Tipton's policy, and granted summary judgment in Fulcrum's favor. This appeal followed.

ISSUE AND STANDARD OF REVIEW
¶ 7 Tipton argues that summary judgment was erroneously granted because the trial court incorrectly interpreted section 31A-22-305(3)(b). In an appeal from a grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to [the non-moving party], and we give no deference to the trial court's decision." State Farm Mut. Auto. Ins. Co. v. Green, 2003 UT 48, ¶ 3, 89 P.3d 97. "Likewise, a district court's interpretation of a statutory provision is a question of law that we review for correctness." State v. Tooele County, 2002 UT 8, ¶ 8, 44 P.3d 680. Where there is ambiguity in a written document, the first order of business is to consider any extrinsic evidence which might resolve the ambiguity. See Wilburn v. Interstate Elec., 748 P.2d 582, 585 (Utah Ct.App.1988), cert. dismissed, 774 P.2d 1149, 1149 (Utah 1989) (noting certiorari was "improvidently granted"). Only if extrinsic evidence does not resolve the ambiguity is it appropriate to construe the document against its drafter. See id.

ANALYSIS
¶ 8 Tipton argues that Fulcrum failed to comply with Utah Code section 31A-22-305(3)(b) because she was not provided with an acknowledgment form that "reasonably explain[ed] the purpose of uninsured motorist coverage," see Utah Code Ann. § 31A-22-305(3)(b)(ii), and she did not waive a higher level of UM coverage. See id. § 31A-22-305(3)(b)(i). Tipton further contends that section 31A-22-305(3)(b) is designed to protect insureds by requiring insurers to provide information about the advantages of UM coverage, as well as the costs associated with *1124 different levels of coverage. Finally, Tipton asserts that section 31A-22-305(3)(b) should be interpreted to require the highest possible level of UM coverage when an insurer has neglected its duty to make the required statutory disclosures.
¶ 9 Fulcrum, on the other hand, argues that an acknowledgment form and waiver are only required if the insured rejects UM coverage.[4]See id. § 31A-22-305(4)(a)(i).[5] Under Fulcrum's interpretation, the acknowledgment form and waiver are simply an after-the-fact memorialization of the decision to forego UM coverage and are not intended to provide the insured with meaningful information and options. Fulcrum contends that, as a result, subsections 305(3)(b) and 305(4)(a) are wholly inapplicable to Tipton because she, in fact, chose UM coverage. See id. § 31A-22-305(3)(b), (4)(a). We disagree.
¶ 10 While considering extrinsic evidence is necessary in this case, the insurance application and prior garage policy relied upon by the trial court do not resolve the ambiguity. But reference to the legislative history of Utah Code section 31A-22-305(3)(b) and consideration of the public policy underlying such statutes, along with familiar principles of statutory construction, do resolve the ambiguity in the Policy and any related uncertainty about the statute. We now consider each of these subjects in greater detail.

I. Legislative History
¶ 11 Prior to 2000, the Utah Code provided that an insured could only reject UM coverage in its entirety "with an express writing to the insurer." Utah Code Ann. § 31A-22-305(4)(a) (Supp.1999). In 2000, the Legislature amended the code to include section 31A-22-305(3)(b), a provision allowing an insured to purchase UM coverage in differing amounts. See id. § 31A-22-305 amendment notes (Supp.2000). The 2000 amendment was prompted by a concern that consumers lacked adequate information about UM coverage when purchasing automobile insurance. Thus, during the House debate on the 2000 amendment, Representative Koehn discussed its purpose in these terms:
When we buy insurance for our cars, and we purchase the amount that we can refer to as the "liability amount," . . . consumers generally don't understand that that's a package that you buy, and they believe that when they're buying that coverage, that's taking care of themselves or their family. That's not the case. . . .
What this bill does is says, when you're purchasing insurance . . . the underinsured coverage[[6]] will be the same as the liability coverage you have, unless you choose not to take that. But what [the bill] presumes, is that the levels will be the same, so that the consumer gets what they believe they're buying, or they understand what they're buying, and . . . it provides a way that if you don't want that, then you can sign a waiver saying "I recognize I'm taking a lesser amount of underinsured coverage."
So, it is not mandating any coverage onto a consumer, but it is affirmatively informing them, and showing that . . . they're taking less coverage.
*1125 Floor Debate on S.B. 189, 2000 Utah Leg., Gen. Sess. (Mar. 1, 2000) (statement of Rep. Susan J. Koehn) (emphasis added).
¶ 12 It is clear that Utah Code section 31A-22-305(3)(b) is not, as Fulcrum argues, designed to simply memorialize the UM insurance decision after-the-fact. Rather, the 2000 amendment was specifically adopted in order to "affirmatively inform[]" insureds about the costs of various levels of UM coverage before they decide whether to purchase it and in what amounts. Id. Therefore, Fulcrum violated its statutory duty under section 31A-22-305(3)(b) when it failed to provide Tipton with the required disclosure form.

II. Public Policy Considerations
¶ 13 Generally speaking, UM statutes are designed to protect insureds by providing compensation to those who are injured or killed by uninsured motorists or other financially irresponsible motorists. See 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 122:10 (3d ed.2005). Such statutes are "remedial [in] nature, requiring that [they] be liberally construed in favor of coverage, with strict and narrow construction given to exclusions." Id. § 122:7. UM statutes are "designed for the benefit of insureds and not insurers. [They are] adopted to benefit the insured motorist, and [are] not intended to relieve . . . insurers of primary responsibility . . . or to benefit them in any way." Id. § 122:11 (emphasis added) (footnote omitted).
¶ 14 UM statutes often require that automobile insurance policies contain a recitation that UM coverage was explained to the purchaser and notice that the purchaser can opt to reject the coverage in writing. See 3 Eric Mills Holmes, Appleman on Insurance § 10.8, at 68 (2d ed.1998). "The purpose of [a written rejection] is to give insureds more options to purchase and enhance their protection from acts of uninsured . . . motorists." Id.
¶ 15 Some UM statutes "require that the offer of uninsured motorist coverage be made by way of a statutorily specified form, which form must be provided to a proposed insured in a writing separately from the application." 7 Am.Jur.2d Automobile Insurance § 44, at 534 (1997). See Utah Code Ann. § 31A-22-305(3)(b)(ii) (Supp.2006) (requiring insurer to provide an acknowledgment form that includes a reasonable explanation of the purpose of UM coverage). "The insurer bears the burden of proving that a meaningful offer has been made, which may require that the limits of optional coverage be specified." 3 Eric Mills Holmes, Appleman on Insurance § 10.8, at 72 (2d ed.1998). Furthermore, "the offer must be sufficient to permit the insured to make an intelligent, informed decision on desired or desirable coverages. The insurer has an affirmative duty to notify the insured in a manner reasonably calculated to place necessary information in the insured's hands[.]" Id. at 74 (footnote omitted). Finally, "[t]o have a meaningful choice, the insured must be given the option of waiving UM coverage, or choosing between various levels of limits. It is only through a meaningful choice that a valid rejection or waiver can be made." Id. at 81-82 (footnotes omitted). These public policy considerations support Tipton's position.

III. Statutory Interpretation
¶ 16 Utah Code section 31A-22-302(1) is clear in this respect: every automobile insurance policy shall include "[UM] coverage under Section 31A-22-305, unless affirmatively waived under Subsection 31A-22-305(4)." Utah Code Ann. § 31A-22-302(1)(b) (Supp. 2006). Further, Utah Code section 31A-22-305(3)(b) provides:
For new policies written on or after January 1, 2001, the limits of [UM] coverage shall be equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum [UM] coverage limits available by the insurer under the insured's motor vehicle policy, unless the insured purchases coverage in a lesser amount by signing an acknowledgment form provided by the insurer that:
(i) waives the higher coverage;
(ii) reasonably explains the purpose of [UM] coverage; and
(iii) discloses the additional premiums required to purchase [UM] coverage with *1126 limits equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum [UM] coverage limits available by the insurer under the insured's motor vehicle policy.
Id. § 31A-22-305(3)(b).
¶ 17 When presented with questions of statutory interpretation, our aim is to discover "the true intent and purpose of the Legislature." Utah v. Tooele Co., 2002 UT 8, ¶ 10, 44 P.3d 680 (internal quotation marks and citation omitted). "The plain language of the statute provides us with the road map to the statute's meaning, helping to clarify the intent and purpose behind its enactment." State v. Maestas, 2002 UT 123, ¶ 52, 63 P.3d 621. "[W]e . . . `presume the legislature use[d] each term advisedly and . . . according to its ordinary meaning.' Consequently, we `avoid interpretations that will render portions of a statute superfluous or inoperative.'" Tooele Co., 2002 UT 8 at ¶ 10, 44 P.3d 680 (third and fourth alterations in original) (citations omitted).
¶ 18 We agree that the Legislature could have been more precise in drafting the 2000 amendment. Utah Code section 31A-22-305(3)(b) states that the amount of UM coverage shall be the same as the lesser of the liability coverage limits or the "maximum [UM] coverage limits available by the insurer under the insured's motor vehicle policy." Utah Code Ann. § 31A-22-305(3)(b). Fulcrum argues that the "maximum . . . available by the insurer under the insured's . . . policy" is a reference to the amount of UM coverage Tipton purchased, not an amount she could have purchased. Id. Fulcrum insists that, as a result, Tipton is eligible only for $65,000 in UM coverage because that is the amount of UM coverage she purchased under her policy. Stated another way, Fulcrum argues, and the trial court agreed, that "the maximum . . . available by the insurer under the insured's . . . policy" is simply a tautological reference to the amount of insurance Tipton actually purchased. Id. We disagree.
¶ 19 Utah Code section 31A-22-305(3)(b) contemplates that "the maximum [UM] coverage limits available by the insurer under the insured's motor vehicle policy," id., is some amount greater than the "lesser amount" the insured might purchase after being advised of the "higher coverage" as well as the "additional premiums required to purchase [UM] coverage with limits equal to . . . the maximum [UM] coverage limits available." Utah Code Ann. § 31A-22-305(3)(b)(i), (iii). We therefore view Utah Code section 31A-22-305(3)(b) as providing for three possible levels of UM coverage. First, UM coverage may be equal to the liability coverage  here, $300,000. Second, UM coverage may be the maximum available from the insurer "under the insured's . . . policy." Id. § 31A-22-305(3)(b). Finally, the insured may choose to purchase some lesser amount by "signing an acknowledgment form provided by the insurer that . . . waives the higher coverage." Id. § 31A-22-305(3)(b)(i). In other words, the statute requires that the insured be presented with the maximum amount of UM coverage available, as well as lesser amounts, and then be allowed to choose.
¶ 20 Our conclusion is bolstered by the fact that the maximum UM coverage "available by the insurer" requires "additional premiums" over and above some lesser amount that the insured may choose to purchase. Id. § 31A-22-305(3)(b)(iii). Otherwise, if an insured purchased an amount of UM coverage that was less than the maximum "available by the insurer," the "higher coverage" and "additional premiums" treated in section 31A-22-305(3)(b), id. § 31A-22-305(3)(b)(i), (iii), would be "superfluous or inoperative." Maestas, 2002 UT 123 at ¶ 52, 63 P.3d 621. We acknowledge that what is meant by the phrase "available by the insurer under the insured's . . . policy," Utah Code Ann. § 31A-22-305(3)(b), is facially ambiguous. However, in light of the other language in that provision, as well as the legislative history of the 2000 amendment, we interpret "the maximum available . . . under the insured's motor vehicle policy," id., to mean the maximum available under the type of policy Tipton purchased, or an amount she could have *1127 purchased, not the amount she actually purchased.[7] Here, that amount would be the maximum UM coverage available under a typical Fulcrum garage policy.
¶ 21 Reading subsection 31A-22-305(3)(b) in conjunction with subsection 31A-22-305(3)(f) also bolsters our conclusion that the maximum amount of UM coverage "available by the insurer" refers to the amount available under the general type of policy, and not the amount that Tipton actually purchased. Id. § 31A-22-305(3)(b), (3)(f). See Maestas, 2002 UT 123 at ¶ 54, 63 P.3d 621 (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 46:05 (6th ed. 2000)) ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole."). Subsection 31A-22-305(3)(f) requires that a notice be sent to existing policyholders informing them of the purpose of UM coverage, see Utah Code Ann. § 31A-22-305(3)(f)(i)(A), as well as "the costs associated with increasing the coverage in amounts up to and including the maximum amount available by the insurer[[8]] under the insured's motor vehicle policy." Id. § 31A-22-305(3)(f)(i)(B).
¶ 22 When subsection 305(3)(f) is read in conjunction with subsection 305(3)(b), it becomes clear that the latter contemplates three separate amounts of potential UM coverage: the liability coverage, the maximum UM coverage available from the insurer, and the amount of UM coverage actually obtained. Otherwise, requiring that a notice be sent to existing policyholders informing them of the opportunity to purchase additional UM coverage would be "nonsensical or absurd," Millett v. Clark Clinic Corp., 609 P.2d 934, 936 (Utah 1980), since by Fulcrum's definition, those policyholders already have the maximum available under their existing policies. Therefore, we conclude that the maximum UM coverage "available by the insurer under the insured's . . . policy," Utah Code Ann. § 31A-22-305(3)(b), refers to the maximum amount Tipton could have purchased had Fulcrum provided her with the required statutory disclosures, not the $65,000 in coverage Fulcrum says she actually purchased.

CONCLUSION
¶ 23 We agree that the language of Utah Code section 31A-22-305(3)(b) is unclear. We conclude, however, that in light of the legislative history of the statute, the public policy underlying UM statutes generally, and the effect of reading the statute as a whole, adopting Fulcrum's interpretation of Utah Code section 31A-22-305(3)(b) would render an absurd result. The 2000 amendment was designed to provide insureds with information and options before purchasing UM insurance, as well as an opportunity to purchase or waive higher levels of coverage. Furthermore, the maximum amount of UM coverage "available by the insurer" refers to the amount Tipton could have purchased, not the $65,000 Fulcrum says she purchased. Therefore, we determine that Fulcrum violated Utah Code section 31A-22-305(3)(b) when it failed to "reasonably explain the purpose of [UM] coverage," id. § 31A-22-305(3)(b)(ii), and to obtain Tipton's signature on an acknowledgment form waiving a higher level of UM coverage. In the absence of the statutorily required waiver, we reverse and remand for the entry of summary judgment in favor of Tipton.[9]
*1128 ¶ 24 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.
NOTES
[1] According to the parties, a "garage policy" insures the risks associated with a business that sells, services, stores, or parks vehicles designed for on-road use.
[2] Presumably, if a state acknowledgment form had been presented to and signed by Tipton, Fulcrum would have, at some point in the litigation, submitted the form to the court. Given that the form is not in the record, we assume that Fulcrum never presented the acknowledgment form to Tipton nor obtained her signature waiving a higher level of UM coverage. Significantly, Fulcrum does not argue otherwise.
[3] Fulcrum tendered a check to Tipton in the amount of $65,000, along with a partial settlement agreement and stipulation. Tipton was not authorized to negotiate the check until she signed the settlement agreement and stipulation. Tipton never signed the settlement agreement or stipulation, nor cashed the check.
[4] The flaw in this position will become apparent. The legislative policy reflected in section 31A-22-305(3)(b) is to ensure that consumers make fully informed decisions about UM coverage, not to give insurers an out if consumers, having not been fully informed, select the lowest available UM coverage without learning how comparatively inexpensive it would be to purchase higher levels of protection.
[5] Although subsection 31A-22-305(4) is related to the topic of waiver and rejection of UM coverage, Fulcrum's reliance on and reference to it is misplaced. That provision specifically relates to the situation when an insurance consumer is rejecting UM coverage in its entirety. See Utah Code Ann. § 31A-22-305(4)(a) (Supp.2006). Subsection 31A-22-305(3)(b), on the other hand, covers situations where a consumer may choose to waive a higher level of UM coverage, but is not rejecting such coverage entirely. See id. § 31A-22-305(3)(b).
[6] Although Representative Koehn's remarks are couched in terms of underinsured motorist coverage, the statute she was addressing refers to both underinsured motorist coverage and UM coverage. Moreover, the substance of the 2000 amendment focused on UM coverage. Accordingly, we are comfortable being guided by Representative Koehn's comments as they relate to UM coverage.
[7] Without any evidence in the record to the contrary, we are presuming that $65,000 was not the maximum amount of UM coverage available and that Tipton could have purchased a higher amount of coverage. Fulcrum has not argued otherwise.
[8] The phrase "available by the insurer" is itself unclear and thus technically ambiguous, although we think it is obvious that the Legislature meant to say "available from the insurer."
[9] The amount of the coverage will depend upon how much UM coverage is available under a garage policy like the one Tipton had. The award should be equal to the lesser of the limits of Tipton's liability coverage  here, $300,000  or the maximum UM coverage available through Fulcrum, less the $65,000 already tendered to Tipton if she still has possession of the check.