2009 UT App 389

**Maria LOPEZ, Plaintiff and Appellant,**

v.

**UNITED AUTOMOBILE INSURANCE COMPANY; and El Sol Insurance Agency, LLC, Defendants and Appellees.**

**No. 20080846–CA.**

Court of Appeals of Utah.

Dec. 24, 2009.

Daniel F. Bertch and Kevin K. Robson, Salt Lake City, for Appellant.

Tim Dalton Dunn and Michael J. Collins, Salt Lake City, for Appellees.

1. Because summary judgment was entered by the trial court, we recite the facts in the light most favorable to the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

Before GREENWOOD, P.J., ORME and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Plaintiff Maria Lopez appeals from the trial court's order granting Defendants United Automobile Insurance Company (United Auto) and El Sol Insurance Agency, LLC's (El Sol) motion for summary judgment, which resulted in the dismissal of Lopez's claims. We affirm in part, and reverse and remand in part.

## BACKGROUND [1]

¶ 2 On February 1, 2007, nonparty Miriam Salazar purchased an automobile insurance policy (the policy) from El Sol, acting as United Auto's agent. As part of her application for coverage, Salazar signed a form provided by El Sol that waived underinsured motorist (UIM) benefits.

¶ 3 One week after Salazar's insurance policy took effect, she was driving the insured automobile with Lopez as her passenger and was struck by another car. Although Salazar was not injured by the accident, Lopez sustained several serious injuries. The other driver was at fault for the accident, and his insurer tendered its policy limits of $25,000 to Lopez. However, that amount was insufficient to pay the costs associated with Lopez's injuries. Lopez subsequently demanded UIM benefits from United Auto, which refused to pay based on the form Salazar executed rejecting those benefits.

¶ 4 Lopez brought suit against Defendants, alleging that they failed to comply with the requirements of the UIM coverage statute, *see* Utah Code Ann. § 31A–22–305.3 (Supp. 2009) [2] (providing for mandatory availability of UIM benefits and setting forth the obligations of the insurer before such benefits may be effectively rejected); that Defen-

2. As a convenience to the reader, we cite to the current version of the code. The relevant statutes have been renumbered and amended, but there have been no substantive changes to the pertinent sections of the statutes since the time of the accident.

dants breached their duty of good faith and fair dealing by failing to explain and offer UIM benefits adequately to Salazar; and that Defendants were negligent because they failed to explain UIM benefits adequately to Salazar and because they did not provide the relevant forms in Spanish.[3] In response, Defendants filed a counterclaim, seeking a declaratory judgment that the form waiving UIM benefits complied with the UIM coverage statute and, therefore, Lopez was not entitled to receive UIM benefits under Salazar's policy.

¶ 5 After conducting discovery, both parties filed motions for summary judgment. The trial court denied Lopez's motion and granted Defendants' motion in part,[4] which resulted in the dismissal of Lopez's claims. The trial court concluded that Lopez lacked standing to reform the contract to include UIM benefits where Salazar had rejected UIM coverage. The trial court also determined that the duty of good faith and fair dealing does not extend to third parties and that, in any event, the form provided by El Sol "clearly incorporates statutory language to reasonably explain the purpose of [UIM] . . . coverage." Finally, the trial court held that Defendants were not negligent because they did not owe any duty to Lopez. Lopez appeals these decisions.

## ISSUES AND STANDARD OF REVIEW

¶ 6 Lopez argues that the trial court erred in granting summary judgment in favor of Defendants on her contract and negligence claims. We "review[ ] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v.*

Johnson, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).[5] Thus, we do not accord any deference to the trial court regarding its "resolution of the legal issues presented[,] and [we] determine only whether the trial court erred in applying the governing law." *Ervin v. Lowe's Cos.*, 2005 UT App 463, ¶ 8, 128 P.3d 11 (internal quotation marks omitted); *see also General Sec. Indem. Co. of Ariz. v. Tipton*, 2007 UT App 109, ¶ 7, 158 P.3d 1121 ("In an appeal from a grant of summary judgment, . . . we give no deference to the trial court's decision."), *cert denied*, 168 P.3d 819 (Utah 2007).

## ANALYSIS

### I. The Trial Court Was Correct in Entering Judgment in Favor of Defendants on Lopez's Negligence Claim.

¶ 7 Defendants challenge Lopez's standing to assert negligence claims against them.[6] Typically, we would consider this issue before turning to the parties' substantive arguments. *See Salt Lake City Corp. v. Property Tax Div.*, 1999 UT 41, ¶ 9, 979 P.2d 346 (stating that standing is a threshold issue that must be addressed before proceeding to further inquiries on the merits). However, Defendants' challenge to Lopez's standing is intertwined with the more substantive question of whether the Defendants owed a duty to persons, like Lopez, who were unidentified at the time that Salazar purchased the automobile insurance. Consequently, we discuss these concepts together.

¶ 8 "The issue of whether a duty exists is entirely a question of law to be determined by the court," which determination we review for correctness. *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). To recover under a negligence theory, "a plain-

---

3. Salazar's first language is Spanish; she speaks very little English. El Sol caters to the Spanish-speaking community.

4. Because the trial court denied Lopez's claims, it also denied Defendants' counterclaim for summary judgment, stating that there was no longer "a justiciable controversy between the parties," and that, therefore, a declaratory judgment "would be advisory and would exceed the Court's jurisdiction." That ruling is not challenged on appeal.

5. Both parties concede that there are no genuine issues of material fact in dispute relevant to this appeal.

6. On appeal, Defendants do not contest Lopez's standing in connection with her contract claim and the UIM coverage statute. Rather, they argue that she lacks standing to pursue her negligence claim because any duty they had was to Salazar and did not extend to Lopez.

tiff must ... establish a duty of care owed by the defendant to the plaintiff," which requires a showing that the " 'defendant is under an[ ] obligation for the benefit of a *particular plaintiff.*' " *Id.* (emphasis added) (quoting *Prosser & Keeton on the Law of Torts* § 53, at 356–57 (W. Page Keeton et al. eds., 5th ed.1984)). To determine whether a duty exists, we "analyz[e] the legal relationship between the parties, the foreseeability of injury, the likelihood of injury, public policy as to which party can best bear the loss occasioned by the injury, and other general policy considerations. Legal duty, then, is the product of policy judgments applied to relationships." *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 19, 215 P.3d 152 (citation and internal quotation marks omitted).

■ ¶ 9 On appeal, Lopez argues that Defendants had a duty to explain UIM coverage fully to Salazar, including providing insurance forms to Salazar in Spanish. Even assuming that Defendants owed such a duty to Salazar, it does not necessarily follow that the duty extended to Lopez. While recognizing that Defendants likely owed Salazar a duty to inform her adequately about UIM coverage, the trial court held that this duty did not extend to unidentified future passengers like Lopez. The trial court explained that fulfilling a duty to inform future passengers "would be difficult, if not impossible, to do," elaborating on these difficulties as follows:

> For example, an insured rejects [UIM] coverage. A week later, the insured offers a ride to a new co-worker the insured just met. If they were involved in an accident, the new co-worker would be a statutory third party beneficiary to the insured's policy. However, the new co-worker would not have received information that the insured rejected [UIM] coverage until he or she made a claim to the insurer and such claim was denied. At the time of contracting, neither the insured nor the insurer could have anticipated that a [particular] "stranger" would be riding in the insured's vehicle and therefore, would be a

statutory third party beneficiary entitled to notice of the insured's waiver of [UIM] coverage. Under [Lopez's] theory, the insurer would have had a duty to inform the new co-worker without the ability to do so and [Lopez's] theory would require the insurer to provide the waived ... [UIM] coverage. The Court does not agree that the insurer's statutory duty to inform extends this far.

¶ 10 We agree with the trial court's reasoning and legal conclusion that the duty to inform does not extend so far as to reach unknown third parties who may later be passengers in an insured's vehicle. Therefore, as a matter of law, Lopez is not within the group of persons who can assert a negligence claim against Defendants, and we affirm the trial court's entry of judgment in favor of Defendants on the negligence claim.

## II. Lopez Is Entitled to Judgment on the Contract Claim.

■ ¶ 11 Lopez next argues that the trial court incorrectly concluded that the form provided by El Sol complied with the UIM coverage statute.[7] *See generally* Utah Code Ann. § 31A–22–305.3(2)(b) (Supp.2009) (detailing the requirements for an insured to purchase UIM coverage that is less than the policy's liability limits); *id.* § 31A–22–305.3(g) (detailing the requirements for an insured to waive UIM coverage). The trial court's "interpretation of [the] statutory provision is a question of law that we review for correctness." *General Sec. Indem. Co. of Ariz. v. Tipton*, 2007 UT App 109, ¶ 7, 158 P.3d 1121, *cert. denied*, 168 P.3d 819 (Utah 2007).

¶ 12 Lopez argues that the form is deficient because it "fails to 'reasonably explain[ ] the purpose of [UIM] coverage' " and "[d]oes [n]ot [d]isclose the additional premiums required to purchase UIM coverage." (Quoting Utah Code Ann. § 31A–22–305.3(2)(b).) In response, Defendants argue that the form's language "contains a reasonable explanation of the purpose of [UIM] coverage" because it mirrors the statutory

---

7. Although the trial court partly based its ruling on Lopez's lack of standing to seek reformation of the policy, Defendants conceded at oral argument that Lopez has standing to do so.

language defining "[UIM] coverage." *See* Utah Code Ann. § 31A–22–305.3(2)(a)(i). Defendants also argue that disclosure of the additional premiums is not required under the statute's waiver provision, *see id.* § 31A–22–305.3(2)(g), but instead is only required under the statute's provision for selecting UIM benefits in an amount less than the policy's liability limits, *see id.* § 31A–22–305.3(2)(b).

¶ 13 We first address Defendants' contention that the form provided a reasonable explanation of the purpose of UIM coverage, as required by the statute. "When presented with questions of statutory interpretation, our aim is to discover the true intent and purpose of the [l]egislature," and we look to the statute's plain language to determine "the statute's meaning [and to] clarify the intent and purposes behind its enactment." *Tipton,* 2007 UT App 109, ¶ 17, 158 P.3d 1121 (internal quotation marks omitted). Therefore, we begin our analysis of the form's compliance by looking to the language of the waiver provision of the UIM coverage statute. It provides, in pertinent part: "(i) A named insured may reject [UIM] coverage by an express writing to the insurer that provides liability coverage . . . . (ii) This written rejection shall be on a form provided by the insurer that includes a reasonable explanation of the purpose of [UIM] coverage and when it would be applicable." Utah Code Ann. § 31A–22–305.3(2)(g).

¶ 14 The form Salazar signed states: "Uninsured/Underinsured Motorists Bodily Injury Coverage provides payment of certain benefits for damages caused by the owner or operator of uninsured/underinsured motor vehicles because of bodily injury, sickness, disease or death." As Defendants note, the form tracks portions of the language of the statute, which provides that "[UIM] coverage . . . provides coverage for covered persons who are legally entitled to recover damages from owners or operators of underinsured motor vehicles because of bodily injury, sickness, disease, or death." *Id.* § 31A–22–305.3(2)(a)(i). According to Defendants, the fact that the form's language is taken from the statutory definition of UIM coverage con-

clusively demonstrates that the form's explanation was reasonable. We do not agree.

¶ 15 Turning first to the statute, we see nothing in Utah Code section 31A–22–305.3(2)(a)(i) that indicates that this section was intended to constitute the reasonable explanation to a consumer of insurance products required by section 31A–22–305.3(2)(g). To the contrary, the definition is placed at the beginning of the UIM coverage section along with the definitions of the other terms used in the statute. *See* Utah Code Ann. § 31A–22–305.3(1), (2)(a)(ii). Furthermore, the definition itself refers to another section of the statute, 31A–22–202(1)(c), to further illuminate the meaning of UIM coverage. By the placement of and cross-reference used in the definition, it is apparent that the legislature anticipated that the definition would be used in the context of the entire statutory scheme—provisions which may not be readily available to the average consumer. Consequently, we see nothing in the statute that would create a safe harbor for Defendants due to their inclusion of some of the statutory definition in the form.

¶ 16 Because there is no presumption of compliance, we now consider the reasonableness of the explanation provided to Salazar. In doing so, we are guided by this court's prior decision in *General Security Indemnity Co. of Arizona v. Tipton,* 2007 UT App 109, 158 P.3d 1121, *cert. denied,* 168 P.3d 819 (Utah 2007). In *Tipton,* the insured claimed that her selection of uninsured motorist (UM) coverage at a level lower than the statutory minimum was invalid where the application form did not attempt to explain the purposes of UM coverage or provide any information regarding the different premiums for higher levels of UM coverage as required by the applicable statute. *See id.* ¶¶ 2, 8. We agreed that the application did not comply with the statute, making the plaintiff's waiver of higher UM coverage invalid. *See id.* ¶ 23.

¶ 17 In reaching that conclusion, we relied on the legislative history of the UM and UIM statutes, *see id.* ¶ 11 n. 6, noting that the "statutes are designed to *protect insureds* by providing compensation to those who are injured or killed by uninsured motorists or

*other financially irresponsible motorists*" and that the "statutes are designed for the benefit of insureds and not insurers. [They are] adopted to *benefit the insured motorist,* and [are] *not intended to relieve . . . insurers of primary responsibility . . . or to benefit them in any way.*" *Id.* ¶ 13 (emphases added) (alterations and omissions in original) (internal quotation marks omitted). Accordingly, the statute places the burden on the insurer to show that the form provided a reasonable explanation of the purposes of UM coverage. *See id.* ¶ 15. To meet that burden, the insurer must demonstrate that "a meaningful offer" of coverage was made and that the offer was "sufficient to permit the insured to make an intelligent, informed decision on desired or desirable coverages." *Id.* Thus, "[t]he insurer has an affirmative duty to notify the insured in a manner reasonably calculated to place necessary information in the insured's hands." *Id.*

¶ 18 Although *Tipton* addressed the issue in the context of the selection of lower UM coverage, rather than the complete rejection of UIM coverage, the *Tipton* court relied on the legislative history of the UIM provisions in its analysis, stating that it was "comfortable being guided by" the legislative history and policy of the closely analogous UIM provision. *See id.* ¶ 11 n. 6. In light of our previous statements in *Tipton* and the nearly identical language of the UM and UIM coverage statutes, we are similarly comfortable relying on the *Tipton* court's analysis of the UM statute in our analysis of the UIM statute here.

¶ 19 The central policy underlying *Tipton* is that the statute imposes an "affirmative duty" on insurers to provide consumers of insurance products with information in a clear, understandable way that will empower them to make informed decisions regarding UM and UIM coverage. *See id.* ¶ 15. The form provided by El Sol states that UIM coverage "provides payment of certain benefits for damages caused by the owner or operator of uninsured/underinsured motor vehicles." We agree with Lopez that this language fails to provide consumers like Salazar with the information needed to make an informed decision regarding insurance coverage. Indeed, the form's language omits information in a way that makes it less understandable than the statute defining UIM coverage. While the statute provides separate definitions for "uninsured motorist coverage", *see* Utah Code Ann. § 31A–22–305(3)(a) (Supp.2009), and "underinsured motorist coverage," *see id.* § 31A–22–305.3(2)(a)(i), thereby highlighting their distinct purposes, the explanation in the form combines the two into a single definition, referring to them collectively as "Uninsured/Underinsured Motorists Bodily Injury Coverage." Likewise, there is nothing in the form that explains the differences in the "certain benefits" provided by UIM coverage as compared with UM coverage or "when it would be applicable," as required by the UIM coverage statute, *see id.* § 31A–22–305.3(2)(g)(ii). In contrast, the legislature separately addressed each type of insurance, *compare id.* § 31A–22–305 (UM coverage), *with id.* § 31A–22–305.3 (UIM coverage),[8] and included the definition of UIM coverage among other defined terms in the UIM coverage section, *see id.* § 31A–22–305.3(1)–(2)(a).

¶ 20 The UIM statute provides a definition that can be used in connection with its other provisions to determine the obligations of insurers with respect to UIM coverage. One of those obligations is to provide consumers electing whether, and in what amount, to purchase coverage a "reasonable explanation of the purpose of [UIM] coverage and when it would be applicable." *Id.* § 31A–22–305.3(2)(g)(ii). The definition in the form provided to Salazar does not give that reasonable explanation using language that would be understood by an ordinary consumer. Although Defendants were not required to provide Salazar with a lengthy treatise explaining UIM coverage, they had an affirmative duty to use a form that provided Salazar with a reasonable and under-

---

**8.** Although the earlier version of the statute dealt with both UM and UIM in a single section of the Utah Code, *see* Utah Code Ann. § 31A–22–305 (2005) (current version as amended at Utah Code Ann. §§ 31A–22–305, –305.3 (Supp.2009)), UM coverage was addressed in subsections (2)-(7), while UIM coverage was separately covered by subsections (8)-(11).

standable explanation of the purpose of UIM benefits that would enable her "to make an intelligent, informed decision" regarding the selection of UIM coverage. *Tipton,* 2007 UT App 109, ¶ 15, 158 P.3d 1121; *see also* Utah Code Ann. § 31A–22–305.3(2)(g)(ii). Because the form provided by Defendants did not provide a reasonable explanation, Salazar's waiver of UIM coverage was invalid. *See* Utah Code Ann. § 31A–22–305.3(2)(g)(ii). Therefore, Lopez is entitled to UIM benefits under the policy, which the statute requires to be in an amount "equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum UIM coverage limits available by the insurer under the insured's motor vehicle policy," *id.* § 31A–22–305.3(b).[9] In this case, the parties agree that amount is $25,000.

## CONCLUSION

¶ 21 We affirm the trial court's entry of summary judgment in favor of Defendants on the negligence claim because they owed no duty to Lopez to explain UIM coverage to Salazar. The trial court was incorrect, however, in granting summary judgment in favor of Defendants on the contract claim. Because the form provided by Defendants did not reasonably explain the purposes of UIM coverage and when it would be applicable as required by the UIM coverage statute, Salazar's waiver of coverage was invalid and Lopez is entitled to receive UIM benefits. We therefore reverse the trial court's order granting Defendant's summary judgment motion and remand for entry of judgment in favor of Lopez in the amount of $25,000.

¶ 22 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.

---

9. Because we conclude that the form did not provide a reasonable explanation of the purposes of UIM benefits, we decline to address Lopez's contention that Defendants were required to disclose the additional premiums for UIM coverage. However, we noted in *General Security Indemnity Co. of Arizona v. Tipton,* 2007 UT App 109, ¶ 9 n. 5, 158 P.3d 1121, *cert. denied,* 168 P.3d 819 (Utah 2007), that there are different statutory requirements for waiver of all UM benefits and waiver of a higher level of coverage. *See id.*